UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES A. DULAK,                                    Case No. 14-10193

        Plaintiff,                             Denise Page Hood
v.                                                 United States District Judge

CORIZON INC., Dr. HUTCHINSON,           Michael Hluchaniuk
Dr. STIEVE, Dr. ABDELLATIF, PA JINDAHL, United States Magistrate Judge
ROGERS, TAMMY ROTHHAAR

        Defendants.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT [Dkt. 70] AND DEFENDANT**
**STIEVE'S CROSS-MOTION FOR SUMMARY JUDGMENT [Dkt. 72]**

## I.  Procedural History

On January 3, 2014, plaintiff James A. Dulak, an inmate currently

incarcerated by the Michigan Department of Corrections (MDOC) at the Gus

Harrison Correctional Facility ("ARF") in Adrian, Michigan, brought this action

under 42 U.S.C. § 1983, alleging a violation of his rights under the United States

Constitution.  (Dkt. 1).  On February 19, 2014, District Judge Denise Page Hood

referred this case to the undersigned for all pretrial purposes.  (Dkt. 11).  On April

25, 2014, MDOC defendant Dr. Jeffrey C. Stieve filed a motion to dismiss

pursuant to Fed. R. Civ. P. 12(b).  (Dkt. 43).  On October 10, 2014, plaintiff

combined his response to defendant's motion to dismiss with a motion for

summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. 70). On December 8, 2014, this court ordered defendants to respond to plaintiff's motion for summary judgment. (Dkt. 71). On December 22, 2014, Dr. Stieve responded to plaintiff's motion for summary judgment and indicated that he was also seeking summary judgment. (Dkt. 72). On December 26, 2014, Corizon Health, Inc., Dr. Badawi Abdellatif, Dr. Craig Hutchinson, and PA Rosilyn Jindal filed a separate response to plaintiff's motion for summary judgment. (Dkt. 73). On February 13, 2015, when ruling on defendant's motion to dismiss (Dkt. 85), this court ordered plaintiff to file a response to Dr. Stieve's arguments pursuant to Fed. R. Civ. P. 56(f)(1). (Dkt. 86). Plaintiff filed his response brief on April 10, 2015. (Dkt. 99).

On March 31, 2015, the District Court agreed with this court's report and recommendation that plaintiff's claims against Dr. Stieve in his official capacity should be dismissed with prejudice. (Dkt. 95, at 5). The District Court also agreed that plaintiff had stated a claim that Dr. Stieve had denied him a shoe accommodation and that Dr. Stieve was therefore not entitled to qualified immunity at that time. (*Id.*) As such, Dr. Stieve remained a defendant in his personal capacity. (*Id.*) The District Court further ruled that Dr. Abdellatif should remain a defendant in the case at that time because Dr. Abdellatif had not properly argued the exhaustion issue. (*Id.* at 4, 6). The District Court, however, dismissed defendant Corizon with prejudice. (*Id.*) The District Court also dismissed PA

2

Jindal.  (*Id*.)  Specifically, the District Court concluded that "the pain medication claim against Defendant Jindal is dismissed without prejudice and the failure to monitor blood pressure claim is dismissed with prejudice."  (*Id*.)

Defendants Corizon, Inc., PA Rosilyn Jindal, and Drs. Hutchinson and Abdellatif filed their combined response brief (Dkt. 73) on December 26, 2014, almost three months before the District Court issued its ruling on defendants' Rogers and Rothhaar's motion for summary judgment (Dkt. 33) and defendant Stieve's motion to dismiss (Dkt. 43).  As such, at issue before the court is the viability of plaintiff's motion for summary judgment (Dkt. 70) as it applies to Drs. Stieve, Hutchinson and Abdellatif and Dr. Stieve's cross-motion for summary judgment (Dkt. 72) against plaintiff.

## II.    Factual Background

Specific to this motion, plaintiff claims that he has requested a shoe accommodation for his right foot neuropathy, which defendants have denied, and that defendants have refused to prescribe narcotic pain medication for plaintiff, even though plaintiff has been prescribed narcotic medication for the past 25 years as a result of a fall from a second story roof and subsequent spinal fusion surgery. (Dkt. 1).  Plaintiff claims that on or about December 6, 2012, he asked RN Chris Clark for a shoe accommodation.  (Dkt. 1, ¶ 20).  RN Clark, directed plaintiff to a "blue binder" wherein he showed plaintiff four conditions for which a shoe

3

accommodation could be issued.  (*Id*.)  Plaintiff claims that neuropathy or diabetes are two of those four conditions.  (*Id*. at ¶ 21).  Plaintiff claims to have both neuropathy and diabetes.  Plaintiff contends that on December 18, 2012, he asked Dr. Abdellatif for a shoe accommodation, but was denied.  (Dkt. 1, ¶ 23).  Plaintiff also claims that Dr. Abdellatif denied the existence of the "blue binder" establishing the criteria for allowing a shoe accommodation.  (*Id*. at ¶ 24).  Plaintiff grieved the denial to the regional medical director, Dr. Stieve, who also denied the shoe accommodation.  (*Id*. at ¶ 26).

Plaintiff contends that defendants denied him adequate treatment for his serious medical issues in violation of the United States Constitution and he seeks declaratory and injunctive relief, and compensatory and punitive damages.  As discussed above, the District Court has already dismissed several defendants because plaintiff's allegations have failed to withstand Rule 12(b)(6) scrutiny.

Now before the court is plaintiff's motion for summary judgment.  (Dkt. 70).  The court notes that plaintiff styled his motion for summary judgment as a combined response to defendant Dr. Stieve's motion to dismiss (Dkt. 43) and alternatively as a motion for summary judgment.  (Dkt. 70).  While the court allowed plaintiff to file his motion in this rather unconventional manner, it noted that it would proceed with addressing plaintiff's motion in this separate report and recommendation.  In response, Dr. Stieve filed a cross-motion for summary

judgment and plaintiff was given the opportunity to fully respond.  (Dkts. 72, 99).

## III.   Parties' Arguments

### A.   Plaintiff's Motion

Plaintiff first argues that Dr. Stieve had sufficient personal involvement with his shoe accommodation claim.  Plaintiff points to Dr. Stieve's affidavit wherein he admits under oath that he had personal involvement by determining that plaintiff did not meet the MDOC criteria for athletic shoes.  (Dkt. 70, Pl.'s Mot. at 1).  Plaintiff indicates that it was in Dr. Stieve's capacity as chief medical officer that he denied plaintiff's shoe accommodation.  (*Id*. at 6).

Plaintiff next examines whether Dr. Stieve is entitled to qualified immunity and goes through the test to determine whether that protection should apply in this case.  (*Id*. at 2-4).  First, plaintiff alleges that a constitutionally protected right has been affected.  Specifically, plaintiff claims that by denying his shoe accommodation, knowing that plaintiff was receiving no treatment for his nerve malady, Dr. Stieve violated his constitutional rights.  (Dkt. 70, Pl.'s Mot., at 4).  Next, plaintiff contends that his constitutional right was clearly established.  (*Id*.)  Plaintiff recognizes that whether an official is protected by qualified immunity for an alleged violation generally turns on the objective reasonableness of the action assessed in light of the legal rules that were clearly established at the time the action was taken.  *See Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1094 (6th

Cir. 1992).  Plaintiff claims that the applicable legal rules here are the Eighth and Fourteenth Amendments, together with the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq*.

Plaintiff claims that he submitted medical records that show that he was entitled to the shoe accommodation.  (Pl.'s Mot. at 6).  Specifically, plaintiff avers that he has submitted medical records from a reputable neurologist that he had peripheral nerve damage of his lower extremity, thus necessitating the shoe accommodation.  (*Id*. & Ex. A).  Plaintiff has also submitted the MDOC criteria that it uses to assess whether inmates are eligible for a shoe accommodation.  (*Id*. & Ex. B).  Plaintiff indicates that there is "a material issue of fact" on whether he meets this criteria.  (*Id*. at 6).

Plaintiff alleges that Dr. Stieve was deliberately indifferent to his condition because it was clear that he had read his medical records and still made the decision to deny the shoe accommodation.  (Pl.'s Mot. Summ. J. at 7).  Plaintiff also claims that the prescription for Tegretol was not effective and, as an anti-convulsant, could have had negative effects on his liver.  (*Id*. at 8).  In sum, plaintiff argues that Dr. Stieve, despite knowledge of plaintiff's foot malady, did nothing to provide treatment.  Plaintiff argues that this amounts to a constitutional violation.

### B.    Dr. Stieve's Response

6

      1.    Plaintiff has failed to establish a violation of the Eighth Amendment

Dr. Stieve argues that plaintiff has failed to establish a violation of the Eighth Amendment. (Dkt. 72, Stieve Br., at 2-8). Specifically, Dr. Stieve argues that an Eighth Amendment claim regarding medical care or treatment must establish something more than mere negligence or a lack of ordinary due care. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Roland v. Johnson*, 856 F.2d 764, 769 (6th Cir. 1988). Instead, it is only the "deliberate indifference to serious medical needs of prisoners" which constitutes the "unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citing *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

Plaintiff argues that on January 17, 2013, Dr. Stieve reviewed plaintiff's request for athletic shoes but determined that plaintiff did not meet the necessary criteria. (Dkt. 72, Stieve Br., at 5; *see also* Dkt. 38, Ex. 2, Pg. ID 274 ¶ 10). Dr. Stieve, however, informed plaintiff that he had the option of purchasing athletic shoes at his own expense. (*Id*.) On April 1, 2014, the assistant chief medical officer denied a second request because plaintiff did not meet the necessary criteria. (*Id*. at ¶ 11). Again, plaintiff was informed that he had the option of purchasing athletic shoes at his own expense. (*Id*.) In addition, Dr. Stieve testified that plaintiff's medical records showed that athletic shoes were never

indicated as a proper course of treatment, but several medications, a transcutaneous electrical nerve stimulation (TENS) unit, and physical therapy had been recommended. *See*, *e.g.*, Dkt. 70, Pg. ID 856.

Dr. Stieve argues that there is a distinction between cases involving a complete denial of medical care and those cases where the prisoner alleges that he has received inadequate medical care. Dr. Stieve argues that the issue here is over a disagreement between plaintiff and medical personnel regarding his course of treatment and that does not implicate the Eighth Amendment. (Dkt. 72, Stieve Br. at 6) (citing *Lewis v. Angelone*, 926 F. Supp. 69, 73 (W.D. Va. 1996)). Questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Dr. Stieve acknowledges plaintiff's lumbar and right foot conditions, but contends that those conditions were not ignored by the medical staff. Rather, plaintiff is expressing a dissatisfaction with respect to the treatment rendered, which, according to Dr. Stieve, does not give rise to a § 1983 claim.

Moreover, Dr. Stieve argues that the court should not substitute its judgment for that of plaintiff's physicians. In this regard,

> . . . the decision, if made by a professional, is
> presumptively valid; liability may be imposed only when
> the decision by the professional is such a substantial
> departure from accepted professional judgment, practice,
> or standards as to demonstrate that the person
> responsible actually did not base the decision on such a
> judgment.

*Youngberg v. Romeo*, 457 U.S. 307, 323 (1982).  In sum, Dr. Stieve contends that

plaintiff's medical records show that his condition has been and are still being

monitored by medical providers.  Plaintiff's argument that he should have had

different or better treatment is one for malpractice, not a violation of the Eighth

Amendment.   For this reason, Dr. Stieve argues that he is entitled to summary

judgment.

### 2.    Dr. Stieve is entitled to qualified immunity

Dr. Stieve also argues that he is entitled to sovereign immunity, however,

the District Court already dismissed plaintiff's claims against Dr. Stieve in his

official capacity, as such this argument is moot.  (Dkt. 95, at 6-7).

Dr. Stieve additionally argues that he is entitled to qualified immunity

because officials or employees of the Michigan Department of Corrections who

are sued in their individual capacities "are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012

9

(6th Cir. 1999); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996). The District Court denied Dr. Stieve's qualified immunity argument at the 12(b)(6) stage because plaintiff sufficiently alleged Dr. Stieve's personal involvement in denying him a shoe accommodation. However, Dr. Stieve restates his argument on summary judgment that he is protected by qualified immunity in this case.

Dr. Stieve sets forth the three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) whether a constitutional violation has occurred; (2) whether the right that was violated was a clearly established right of which a reasonable person would have known; and, (3) whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Higgason v. Stephens*, 288 F.3d 868, 876-77 (6th Cir. 2002); *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

In sum, Dr. Stieve argues that plaintiff's claim against him fails because plaintiff has not demonstrated that he possessed a sufficiently culpable state of mind; that being that the treatment was tantamount to an intent to punish. Since no constitutional or federal law violation has occurred, Dr. Stieve argues that he is entitled to qualified immunity.

### C.    Drs. Hutchinson and Abdellatif's Response

In his response to Dr. Stieve's motion seeking dismissal, plaintiff made an embedded motion for summary judgment. (Dkt. 70). On December 8, 2014, the court ordered that all defendants respond to plaintiff's embedded motion for summary judgment. (Dkt. 71). The Corizon defendants – including at the time – Corizon, Inc., PA Rosilyn Jindal, together with Drs. Hutchinson and Abdellatif filed a response to the court's order. (Dkt. 73).

As previously noted, however, the District Court dismissed plaintiff's claims against Corizon, Inc. and PA Rosilyn Jindal. (Dkt. 95). This order was entered after defendants Corizon, Inc. and Jindal, together with Drs. Hutchinson and Abdellatif responded to plaintiff's motion for summary judgment. (Dkt. 73). In light of the District Court's order, therefore, this court will construe the response (Dkt. 73) as being submitted from the remaining parties, Drs. Hutchinson and Abdellatif.

Drs. Hutchinson and Abdellatif argue that plaintiff's motion, however, does not address any claims against them, and therefore does not entitle plaintiff to any relief.

**D.    Plaintiff's Reply**

On April 10, 2015, plaintiff filed a reply indicating that Dr. Stieve's motion is moot and has already been ruled upon by the court. (Dkt. 99). Plaintiff claims that all issues that have been previously decided by the court are precluded from

being decided again and Dr. Stieve's attempts to raise them here should be estopped. Plaintiff argues that because Stieve failed to timely object to any of the court's previous rulings, Dr. Stieve's arguments should be rejected. (*Id.*) Specifically, plaintiff argues that Dr. Stieve was personally involved in plaintiff's medical care, and that he was deliberately indifferent to plaintiff in administering his medical care. (*Id.* at 4). Both of these issues, claims plaintiff, create issues of fact, and preclude summary judgment in Dr. Stieve's favor. (*Id.* at 4-5). Plaintiff also claims that the issue of qualified immunity is also precluded. (*Id.* at 5).

## IV.   Analysis and Conclusions

### A.   Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and

12

all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

**B.    Legal Analysis**

With respect to plaintiff's argument that the issues Dr. Stieve raises in his motion for summary judgment are somehow precluded or "moot" because the

court has already ruled on them, plaintiff more accurately asks the court to apply the "law of the case" doctrine where "a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990); *see also United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994).

In its March 31, 2015 order, Judge Hood agreed with this court's report and recommendation that "claims against Defendant Jeffrey C. Stieve in his official capacity should be dismissed with prejudice." (Dkt. 95). The District Court also agreed that plaintiff had stated a claim against Dr. Stieve of denying him a shoe accommodation and was therefore not entitled to qualified immunity. (*Id*.) Plaintiff is correct in observing that a previous opinion serves as the law of the case. *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990). "Accordingly, a court will revisit those legal determinations only when the court has a clear conviction of error with respect to a point of law on which its previous decision was predicated." *Moses v. Business Card Express, Inc*., 929 F.2d 1131, 1137 (6th Cir. 1991). However, the report and recommendation here is not based on Dr. Stieve being granted qualified immunity, therefore, an examination of whether the doctrine of law of the case applies is not necessary. Moreover, there has been no previous ruling on whether Dr. Stieve was deliberately indifferent to plaintiff's serious medical needs.

14

In the context of medical care, a prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated only when the prisoner can demonstrate a "deliberate indifference" to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (citations omitted). Moreover, mere negligence in identifying or treating a medical need does not rise to the level of a valid mistreatment claim under the Eighth Amendment. *Estelle*, 429 U.S. at 106.

A viable Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. Courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay

15

for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 8 (internal citations and quotation marks omitted).  Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The Sixth Circuit has stated that a medical need is sufficiently serious if the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (citation omitted).  For obvious medical needs left completely untreated, "the delay alone in providing medical care creates a substantial risk of serious harm." *Id.* at 899.  By contrast, where a "'deliberate indifference' claim is based on a prison's failure to treat a condition adequately" or on "a determination by medical personnel that medical treatment was unnecessary," a plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Id.* at 897-98.

Here, the court must determine whether plaintiff has presented evidence that his medical need was "sufficiently serious."  The court notes that in his motion for summary judgment, plaintiff does not specifically direct the court to supporting

16

evidence other than to attach his medical records to the motion in the form of
exhibits and refer to those medical records generally.  (Dkt. 70, at p. 11).
Nevertheless, the court has reviewed plaintiff's medical evidence and has
determined that plaintiff did suffer a fall in 1998 which resulted in the fracture of
his right foot.  (Dkt. 70, at Pg. ID 836).  Plaintiff's fracture required two surgeries.
(*Id*.)  An x-ray was completed of plaintiff's right foot in May 2011.  In August
2011, a physical exam indicated that plaintiff presented with a surgical scar on his
right foot/ankle and a limp on his right side.  (Dkt. 70, at Pg. ID 851).  However,
plaintiff tested normally on the following ankle tests: the "anterior drawer,"[1]
"Talar tilt"[2] and "Subtalar tilt."[3]  (*Id*.)  Moreover, plaintiff's lower extremity
strength/neurovascular was deemed normal and his neurological reflexes (both
Patellar and Achilles) were both normal.  (*Id*.)  The pain assessment in his
ankle/foot was assessed to be "fair."  (*Id*.)

     Importantly, this is not a case where treatment was not provided.  Indeed,

---

[1] The "anterior drawer" test is used to assess for instability of the ankle.  *See*
http://orthoassessmente.blogspot.com/search/label/Ankle

[2] The "Talar tilt" test is used to examine the integrity of the calcaneofibular or the deltoid
ligament.  A positive test will result in laxity and/or pain.  *See*
http://orthoassessmente.blogspot.com/search/label/Ankle

[3] A normal inversion at the subtalar joint is approximately 30 degrees.  A positive test
consists of increased subtalar joint inversion greater than 10 degrees on the affected side with
loss of endpoint for the calcaneofibular ligament.  *See*
http://accessmedicine.mhmedical.com/content.aspx?bookid=854&sectionid=49695372

plaintiff received several medications for his pain while at MDOC, including: Neurotin, Elavil, Nsaids, and Tylenol. (Dkt. 70, at Pg. ID 850). Plaintiff reported varying levels of effectiveness regarding these medications. For example, plaintiff indicated that Elavil gave him pain relief of a five on a one-to-ten scale, however, Neutrotin gave him pain relief of a two on the same pain scale. (*Id*.) As noted previously, MDOC also provided medical testing, x-raying plaintiff's right foot and completing other forms of testing on his foot and ankle to determine whether further treatment and follow-up was necessary. (Dkt. 70, at Pg. ID 850-51). Plaintiff was also referred to the Pain Management Committee on two occasions, on July 7, 2011 and August 17, 2011. (Stieve Aff. ¶ 6). Importantly, Dr. Stieve testified that athletic shoes were never identified as a proper course of treatment in plaintiff's medical records. (Dkt. 70, at Pg. ID 856). The court's review of the record confirms this conclusion.

The MDOC Medical Service Advisory Committee Guidelines outlines when MDOC is responsible for providing prisoners with properly fitting state shoes. (Dkt. 70, Ex. B). The guidelines provide that athletic or tennis shoes "are to be provided by Healthcare on the recommendation of a Medical Practitioner for the following conditions only":

     1)     Severe arterial insufficiency;

     2)     Advanced diabetes mellitus; with current vascular

or neurological complications;

3)    Peripheral neuropathies of lower extremities
      decreasing sensation;

4)    Venous insufficiency with evidence of venous
      stasis ulcerations (new or old).

(Dkt. 70, at Pg. ID 845).   Dr. Stieve indicated that on January 17, 2013, he

reviewed plaintiff's request for a shoe accommodation and determined that

plaintiff did not meet the MDOC criteria, but advised plaintiff that he could

purchase his own shoes if desired.  (Stieve Aff. ¶ 10).  On April 1, 2014, the

ACMO (Assistant Chief Medical Officer) reviewed an RMO's (Regional Medical

Officer) request for tennis shoes.  The ACMO deferred the request and indicated

that tennis shoes were not medically necessary and advised plaintiff that he could

purchase his own shoes.  (*Id*. at ¶ 11).  Moreover, plaintiff continues to be seen by

MDOC medical professionals.  (*Id*. at ¶ 13).

Based on the foregoing and because plaintiff has failed to direct the court to

"verifying medical evidence in the record to establish the detrimental effect of the

delay in medical treatment" the undersigned cannot conclude that plaintiff has

shown that his injury is "sufficiently serious" in nature to constitute a violation of

the Eighth Amendment.  *Blackmore*, 390 F.3d at 897-98.

The undersigned additionally finds that plaintiff cannot raise a genuine

issue of material fact as to the second requirement–namely, that Dr. Stieve was

19

deliberately indifferent to his serious medical needs.  The subjective component

requires that the defendant act with deliberate indifference to an inmate's health or

safety.  *Farmer*, 511 U.S. at 834.  To establish the subjective component, "the

plaintiff must allege facts which, if true, would show that the official being sued

subjectively perceived facts from which to infer substantial risk to the prisoner,

that he did in fact draw the inference, and that he then disregarded the risk."  *Id.* at

837.  In other words, this prong is satisfied when a prison official acts with

criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial

risk of serious harm."  *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (citing

*Farmer*, 511 U.S. at 839-40).  "Basically, there must be a knowing failure or

refusal to provide urgently needed medical care which causes a residual injury that

could have been prevented with timely attention."  *Lewis v. Corr. Med. Servs.*,

2009 WL 799249, at *2 (E.D. Mich. Mar. 24, 2009).

 In cases where an inmate alleges deliberate indifference but the record

demonstrates that the inmate received medical attention and is, in essence, filing

suit because he disagrees with certain treatment decisions made by the medical

staff, the plaintiff fails to state a claim under the Eighth Amendment.  *See*

*McFarland v. Austin*, 196 Fed. Appx. 410, 411 (6th Cir. 2006) ("as the record

reveals that McFarland has received some medical attention and McFarland's

claims involve a mere difference of opinion between him and medical personnel

20

regarding his treatment, McFarland does not state a claim under the Eighth Amendment"); *White v. Corr. Med. Servs., Inc.*, 94 Fed. Appx. 262, 264 (6th Cir. 2004) (affirming dismissal of the complaint for failure to state a claim where the essence of plaintiff's claims was that he disagreed with the defendants' approaches to his medical treatment where defendant discontinued plaintiff's previous course of treatment and prescribed what plaintiff considered to be less effective treatment); *Catanzaro v. Michigan Dep't of Corr.*, 2010 WL 1657872, at *3 (E.D. Mich. Feb. 28, 2010) (plaintiff failed to state a claim of deliberate indifference when "he specifically alleges that he was given medications that proved ineffective to relieve his symptoms, rather than medications that he believed were more effective, such as Drixoral, Sudafed and Deconamine"), *adopted by* 2010 WL 1657690 (E.D. Mich. Apr. 22, 2010); *Allison v. Martin*, 2009 WL 2885088, at *7 (E.D. Mich. Sept. 2, 2009) (plaintiff failed to state a claim of deliberate indifference in violation of the Eighth Amendment when the complaint reveals plaintiff was seen over a dozen times for his eczema and was given medication, though not the "type" and quantity he requested). Thus, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d at 703.

21

The law is clear where a prisoner is provided with treatment, the fact that he is not provided with the best possible treatment does not make the course selected, unacceptable or unconstitutional. Plaintiff has not shown that Dr. Stieve was deliberately indifferent to his medical needs by selecting a treatment option that was within the approved range.

The court additionally concludes that plaintiff's motion did not address any claims that plaintiff had against Drs. Abdellatif or Hutchinson, as such, plaintiff is not entitled to any relief against those defendants.

## IV.    Recommendations

For the reasons stated herein, the undersigned recommends that plaintiff's motion for summary judgment (Dkt. 70) be **DENIED**. Further, the undersigned recommends that Dr. Stieve's cross-motion for summary judgment (Dkt. 72) be **GRANTED**, and that Dr. Stieve be **DISMISSED WITH PREJUDICE.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 2, 2015                    s/Michael Hluchaniuk
                                      Michael Hluchaniuk
                                      United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

  I certify that on <u>July 2, 2015</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): <u>James Dulak #463678, Gus Harrison Correctional Facility, 2727 E. Beecher Street, Adrian, MI 49221</u>.

           <u>s/Durene Worth</u>
           Acting in the absence of
           Tammy Hallwood, Case Manager
           (810) 341-7887
           tammy_hallwood@mied.uscourts.gov