UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES A. DULAK,                                  Case No. 14-10193

           Plaintiff,                       Denise Page Hood
v.                                               United States District Judge

CORIZON INC., Dr. HUTCHINSON,            Michael Hluchaniuk
Dr. STEVE, Dr. ABDELLATIF, PA JINDAHL,   United States Magistrate Judge
ROGERS, TAMMY ROTHHAAR

           Defendants.
_____/

## REPORT AND RECOMMENDATION ON DR. ABDELLATIF AND DR. HUTCHINSON'S MOTION FOR SUMMARY JUDGMENT [Dkt. 80]

**I.      Procedural History**

On January 3, 2014, plaintiff James A. Dulak, an inmate currently

incarcerated by the Michigan Department of Corrections at the Gus Harrison

Correctional Facility ("ARF") in Adrian, Michigan, brought this action under 42

U.S.C. § 1983, alleging a violation of his rights under the United States

Constitution.  (Dkt. 1).  On February 19, 2014, District Court Judge Denise Page

Hood referred this case to the undersigned for all pretrial purposes.  (Dkt. 11).  On

February 2, 2015, Drs. Badawi Abdellatif and Craig Hutchinson filed a motion for

summary judgment pursuant to Fed. R. Civ. P. 56, alleging that plaintiff cannot

establish an Eighth Amendment violation because he has received appropriate

treatment for his Hepatitis C. (Dkt. 80). Plaintiff requested a 180-day extension to respond to defendants' motion for summary judgment. (Dkt. 90). The undersigned allowed a 30-day extension, giving plaintiff until May 11, 2015 to respond. (Dkt. 93). The undesigned also extended defendants' reply deadline to May 26, 2015. (*Id*.) On May 19, 2015, plaintiff filed his response brief. (Dkt. 106). Defendants' Abdellatif and Hutchinson filed their reply brief on May 26, 2015. (Dkt. 107).

On June 15, 2015, plaintiff filed a motion to strike defendants' reply brief claiming that it did not comply with the Local Rules. (Dkt. 110). On June 23, 2015, this court denied plaintiff's motion to strike concluding that defendants fully complied with the Local Rules and with this court's order. (Dkt. 111).

## II.    **Factual Background**

### A.    Plaintiff's Claims

At all times relevant to the events at issue here, plaintiff was an inmate at the Gus Harrison Correctional Facility. (Dkt. 1 ¶ 6). Plaintiff alleges that Dr. Abdellatif is a doctor at the facility and is responsible for the provision of medical care to prisoners. (*Id*. ¶ 9). Plaintiff alleges that on February 24, 2010, MDOC informed him that he tested positive for Hepatitis C. (*Id*. ¶ 12). Plaintiff's bloodwork, according to him was "insanely" inflamed, well beyond the normal limits. (*Id*.)

2

On December 6, 2012, plaintiff claims that he explicitly asked for treatment for his Hepatitis C and was told to ask the doctor at his upcoming scheduled visit. (*Id*. ¶ 13).  On December 18, 2012, plaintiff was seen by Dr. Badawi Abdellatif. (*Id*. ¶ 14).  Plaintiff indicated to Dr. Abdellatif that his Hepatitis symptoms were "terrible" and were interfering with daily activities such as walking and exercising. (*Id*.)  Plaintiff alleges that Dr. Abdellatif stated that he stood behind MDOC's Chief Medical Officer (Dr. Craig Hutchinson's) decision to not treat plaintiff's Hepatitis C until plaintiff reached a level II cirrhosis and grade II fibrosis.  (*Id*. ¶ 15).  Plaintiff claims that if he were to wait this long to be treated, his liver would suffer irreparable harm.  (*Id*.)  Plaintiff claims that he has been informed that cancer forms in the fourth term of fibrosis.  (*Id*.)  Further, plaintiff claims that Dr. Abdellatif informed him that Hepatitis C treatment is very expensive and bears a heavy burden on the State for treatment with a low success rate.  (*Id*. ¶ 16).

MDOC performed a biopsy on plaintiff and determined that he had level I cirrhosis and grade 0 fibrosis.  (Dkt. 1 ¶ 17).  Plaintiff showed Dr. Abdellatif his daily medical journal listing his daily symptoms, ailments, and complaints; nevertheless, Dr. Abdellatif refused to treat plaintiff.  (*Id*. ¶ 18; *see also* Ex. B). On April 2, 2013, plaintiff received a letter from the Corrections Ombudsman, Keith Barber, informing plaintiff that the MDOC's Clinical Management Program for the treatment of Hepatitis C will not treat Hepatitis C patients until they reach

grade II cirrhosis and level II fibrosis.  (*Id.* ¶ 19; *see also* Ex. C).  More

specifically, the letter advised prisoners whose liver biopsies show moderate

(grade 2) inflammation and moderate (stage 2) fibrosis without advanced

decompensated cirrhosis or other contraindications to antiviral therapy, were

generally not considered for antiviral therapy.  Plaintiff was further advised that he

did not meet the program qualifications at that time, but that he would be

monitored closely in the chronic care clinic and was scheduled for a re-evaluation

in June 2013.  (Dkt. 1, Ex. C, at Pg. ID 38-39).

> B.    Evidence of Plaintiff's Medical Treatment

Dr. Hutchinson is the Clinical Consultant in Infectious Diseases for

Corizon, and is certified in Internal Medicine and Infectious Diseases by the

American Board of Internal Medicine. (Dkt. 80, Ex. B ¶ 2).  In his position, Dr.

Hutchinson provides evaluation and treatment of prisoners at MDOC who have

Hepatitis C Virus ("HCV").  (*Id.* ¶¶ 2, 5).  Dr. Hutchinson testified that MDOC's

HCV treatment program follows the latest national treatment guidelines.  (*Id.* ¶ 5).

The number of inmates who can receive treatment at any one time is controlled by

the MDOC and is commensurate with the number of individuals requiring

treatment under the standards of the program.  (*Id.*)

Pursuant to MDOC's HCV treatment program, inmates who have been

identified as having HCV are monitored and prioritized for consideration for

4

treatment. (*Id*. ¶ 6). Specifically, those inmates who need the treatment most immediately are provided access to the treatment first. (*Id*.) This is determined by two criteria: the individual's liver function and their bone marrow production. (*Id*.) Specifically, those inmates at stage four fibrosis of the liver (cirrhosis), with the lowest bone marrow and liver reserve are prioritized, as they can least afford to await future treatment options. (*Id*.) Conversely, inmates who are below stage two fibrosis of the liver are not generally considered for antiviral therapy. (*Id*.) This is because patients with no or only minimal fibrosis (stage 0 or 1) have a low risk of liver-related complications and liver-related deaths over the next 10 to 20 years. (*Id*.)

Dr. Hutchinson's role in the antiviral treatment program is to evaluate inmates eligible for the program and to determine who is to receive the treatment and when. (*Id*.) Dr. Hutchinson must make individualized determinations, on a case-by-case basis. (*Id*.) If an inmate does not qualify for antiviral treatment, such as if his biopsy shows mild or no fibrosis, the inmate will be followed in the chronic care clinic at least every six months, and will receive a recommendation for timing of a repeat liver biopsy to monitor the progression of the inmate's HCV infection. (*Id*. ¶ 7). Due to the slow progression of liver fibrosis resulting in the 10 to 20 year window of safety, repeat biopsies are typically recommended every four to five years. (*Id*.)

5

Dr. Hutchinson testified that the current antiviral therapy treatment for HCV is not low risk, well tolerated or highly effective, and has to be carefully considered before providing it to any given patient. (*Id*. ¶ 8). Moreover, patients who have not yet reached a certain level of HCV are not good candidates for antiviral treatment as they could potentially be healthy and asymptomatic for up to 20 years without any treatment at all. (*Id*.) Dr. Hutchinson also testified that it is expected that a less toxic and more effective therapy will be FDA-approved in the near future. (*Id*.) Moreover, according to Dr. Hutchinson, MDOC patients are monitored for progression in accordance with national standards and are provided HCV treatment when necessary. (*Id*.)

In April 2011, plaintiff was determined to have HCV genotype 1a and underwent a liver biopsy in July 2011, which revealed stage 1 fibrosis. (Dkt. 80, Ex. B, ¶ 9; *see also* Ex. A, at Pg. ID 1-28). Plaintiff then saw Dr. Hutchinson for a telemedicine consultation on November 15, 2011, when Dr. Hutchinson found no overt extra hepatic disease due to plaintiff's HCV infection and noted that his liver biopsy disqualified him for treatment under MDOC's current treatment protocol. (Ex. B, ¶ 9; *see also* Ex. A, at Pg. ID 29-36). Based on plaintiff's prior testing and these findings, Dr. Hutchinson recommended that plaintiff be scheduled for viral hepatitis or gastrointestinal chronic care clinic every six months and that he be referred back to Dr. Hutchinson for reconsideration of antiviral therapy if any

6

evidence of rapid fibrosis or significant extrahepatic disease emerged. (Ex. B, ¶ 10; *see also* Ex. A, at Pg. ID 29-36). Dr. Hutchinson also recommended that plaintiff be considered for a repeat liver biopsy in five years and ordered Pneumovax (a vaccine to protect against infection). (*Id*.) Dr. Hutchinson discussed his findings and recommendations with plaintiff, including the MDOC's HCV protocol, and provided him information regarding the program. (*Id*.)

Plaintiff continued to be followed and monitored after his consultation with Dr. Hutchinson. (Ex. A, at Pg. ID 37-96; *see also* Ex. C ¶¶ 3-10). Plaintiff received regular chronic care and treatment for his HCV infection among other conditions, including pain medication. (Ex. C ¶ 5). On December 18, 2012, Dr. Abdellatif saw Plaintiff for a chronic care visit to assess Plaintiff's HCV infection. (*Id*. ¶ 6). During the appointment, Plaintiff reported that his HCV infection was causing him confusion, lack of energy, nausea, fever, aches and pain. (*Id*.) However, he did not report or otherwise display symptoms of significant liver disease or cirrhosis at that time. (*Id*.) Further, there was no evidence of jaundice, pruritus, melena, hematochezia, hematemesis, increased girth, lower extremity edema, easier bleeding or bruising, abdominal pain or a shift in plaintiff's sleep cycle. (*Id*.) Dr. Abdellatif's physical examination also revealed no hepatic or spleen enlargement, no hepatic tenderness and no ascites. (*Id*.) Based on this December 18, 2012 examination, plaintiff's HCV infection appeared to be stable

7

and he did not need to follow up with Dr. Hutchinson directly. (*Id*. ¶ 7). Dr. Hutchinson indicated that plaintiff should follow up in the chronic care clinic every six months and should be referred back for reconsideration of antiviral therapy if there was rapid fibrosis or significant extrahepatic disease had emerged. (*Id*.) Plaintiff's other chronic conditions and complaints were also addressed during the December 2012 appointment. (*Id*. ¶ 8). In addition, Plaintiff's pain medication was renewed and he was scheduled for his next chronic care visit. (*Id*.) Following the December 2012 appointment with Dr. Abdellatif, Plaintiff continued to have regular chronic care appointments with other MDOC medical providers as deemed appropriate. (*Id*. ¶ 9). Plaintiff's medical condition has been closely monitored in accordance with the MDOC treatment protocol and he has remained medically stable. (*Id*. ¶¶ 5-11).

Plaintiff has, at times, made complaints of liver pain, however, his HCV infection is not at a stage that should be causing him any pain. (Dkt. 80, Ex. D ¶ 10). In any event, MDOC's Pain Management Committee's ("PMC") pain management plan for Plaintiff has included, among other recommendations, a prescription for Tegretol and an anti-inflammatory medication. (*Id*. ¶ 11). Plaintiff took Tegretol until November 2012, when he refused the medication, reporting that he was trying to wean himself off any unnecessary medications. (*Id*.) In addition to the recommended PMC medications, Plaintiff has also

8

regularly taken Naprosyn and Motrin, including a renewal of his Naprosyn (Anaprox) by Dr. Abdellatif in December 2012.  (*Id*. ¶ 12; *see also* Ex. C, ¶ 9; Ex. A, at Pg. ID 52).  Plaintiff has, at all times, been provided with pain medications consistent with the recommendations of the PMC and his treating providers. (Ex. D, ¶¶ 11-13).

### III.   Parties' Arguments

A.   <u>Drs. Hutchinson and Abdellatif's Motion for Summary Judgment</u>

Drs. Hutchinson and Abdellatif bring their motion for summary judgment under Fed. R. Civ. P. 56 because they claim that plaintiff is unable to sustain his Eighth Amendment claim against them that he received inadequate medical care for Hepatitis C because he has received appropriate treatment.  (Dkt. 80). Defendants specifically argue that plaintiff is unable to establish that either Dr. Hutchinson or Abdellatif was deliberately indifferent to plaintiff's serious medical needs.  (*Id*. at 9-14).

To establish an Eighth Amendment claim, a plaintiff must show that his medical need is sufficiently "serious".  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Comstock v. McCrary*, 273 F.3d 693, 702-3 (6th Cir. 2001).  Defendants do not contest that plaintiff's medical needs meet this requirement.  Second, the plaintiff inmate must demonstrate that "deliberate indifference" has been shown to his serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "To satisfy the

9

subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 702. Mere medical negligence is never enough to state an Eighth Amendment claim. *Estelle*, 429 U.S. at 106. The failure of an official to recognize a significant risk that he should have perceived, but did not, is insufficient to constitute a violation of the Eighth Amendment. *Comstock*, 273 F.3d at 703. On the other hand, it is not required that the doctor acted for the very purpose of causing harm or with knowledge that harm would result. *Id.* The inmate must demonstrate that the doctor recklessly disregarded a substantial risk of serious harm. *Id.*

Defendants argue that it is well-established in this Circuit that a plaintiff inmate's mere disagreement with a course of medical treatment does not give rise to a constitutional violation. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *Owens v. Hutchinson*, 79 Fed.Appx. 159, 161 (6th Cir. 2003) (finding no deliberate indifference where the patient did not receive his desired antiviral therapy because his disagreement with the reasoned treatment decisions made concerning his HCV infection did not entitle him to relief). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical

10

judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860.

Moreover, defendants argue that while an Eighth Amendment claim may be premised on deliberate indifference to exposing an inmate to an unreasonable risk of serious harm in the future due to a delay in medical treatment, "an alleged delay in receiving treatment requires an examination of the effects of the delay." *Dodson v. Wilkinson*, 304 Fed.Appx. 434, 439 (6th Cir. 2008) (finding no Eighth Amendment violation in connection with claim premised on treatment for HCV infection). "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* (citation omitted).

Specifically with respect to the allegations against each of the MDOC physicians, defendants argue:

1. Dr. Hutchinson was not deliberately indifferent to a serious medical need

Defendants argue that Dr. Hutchinson's exercise of his medical discretion with regard to the appropriate course and extent of treatment medically indicated for plaintiff does not offend the Constitution. *See Comstock*, 273 F.3d at 702; *see also Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). Because

plaintiff's medical records show that Dr. Hutchinson did not disregard a substantial risk of harm to plaintiff, defendants contend that Dr. Hutchinson should be granted summary judgment.  (Dkt. 80, at 12).

Defendants acknowledge that whether an Eighth Amendment claim exists in Hepatitis C cases ultimately depends on whether interferon treatment is medically-indicated for the patient's condition.  *Howze v. Hickey*, 2011 WL 673750, *7 (E.D. Ky 2011) (Dkt. 80, Ex. E).  Here, defendants contend, plaintiff received testing (including a liver biopsy), examination and evaluation related to his HCV infection, and Dr. Hutchinson, an infectious disease specialist, made the determination that plaintiff did not qualify for antiviral therapy pursuant to the MDOC treatment protocol.  (Dkt. 80, Ex. B ¶ 9).  At the same time Dr. Hutchinson made the medical determination that plaintiff did not qualify for antiviral therapy, Dr. Hutchinson also directed that plaintiff be scheduled for a repeat biopsy five years later.  (*Id*. ¶ 10).  Plaintiff was also given a vaccine to protect against infection and scheduled for chronic care appointments every six months so that MDOC could monitor his condition.  (*Id*.)  He further directed that plaintiff should be referred back to him should his condition significantly change in the interim. (*Id*.)

Defendants contend that plaintiff's medical records show that he was in fact monitored as directed by Dr. Hutchinson and that his condition is stable.  (Dkt. 80,

Ex. C ¶¶ 3-10).  In the face of this medical evidence, without producing any

qualified medical testimony rebutting Dr. Hutchinson's analysis and

recommendations, plaintiff simply disagrees with Dr. Hutchison's trained, expert

evaluation and opinion. This is insufficient to establish a constitutional violation.

*Westlake*, 537 F.2d at 860 n. 5.

> 2.    Dr. Abdellatif was not deliberately indifferent to a serious
>        medical need.

Defendants argue that, unlike Dr. Hutchinson, Dr. Abdellatif did not control

or determine whether inmates received or became eligible for HCV antiviral

therapy.  (Dkt. 80, p. 13).  As such, any claims against Dr. Abdellatif regarding

whether plaintiff should have received antiviral therapy are misplaced.  *Ashcroft v.

Iqbal*, 556 U.S. 662, 676 (2009) ("a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has

violated the Constitution.").

Moreover, defendants contend that plaintiff's medical records show that Dr.

Abdellatif provided plaintiff care for his HCV infection as directed.  (Dkt. 80, Ex.

C, ¶¶ 3-12; *see also* Ex. D ¶¶ 10-12)  Defendants point out that plaintiff had

routine monitoring and evaluation of his HCV infection, including regular chronic

care appointments where medical providers, including Dr. Abdellatif, examined

plaintiff's condition and assessed him for any symptoms that would indicate any

of progression of his condition or otherwise suggest that further consultation was

necessary.  (*Id*.)  As noted above by defendants, when Dr. Abdellatif saw plaintiff

in December 2012, he did not present with any symptoms warranting further

evaluation by Dr. Hutchinson.  (Dkt. 80, Ex. C ¶¶ 6-7).  Following this chronic

care visit, plaintiff's medical records confirm that his condition remained stable

with no emergent HCV symptoms.  (*Id*.)  Plaintiff's records also show that he has

continued to be monitored as directed since that time. (*Id*. ¶ 9; *see also* Ex. B

¶¶ 5-11).  In sum, defendants contend that Plaintiff cannot demonstrate that the

medical care provided by Dr. Abdellatif was deliberately indifferent to or had a

detrimental effect on plaintiff's condition. Accordingly, plaintiff's claims against

Dr. Abdellatif should be dismissed.

   B.   Plaintiff's Response

Plaintiff first objects to defendants attempt to "misguide" the court into

believing that MDOC provided care and/or treatment to plaintiff.  (Dkt. 106, at 4).

Instead, plaintiff contends that with the exception of Dr. Abdellatif's chronic care

visit in December 2013, no care and/or treatment was provided.[1]  (*Id*.)

Furthermore, plaintiff alleges that during this visit when plaintiff gave Dr.

Abdellatif his daily medical journal, Dr. Abdellatif "thumbed through the first two

---

[1]  Plaintiff says that the visit occurred in December 2013, however, the medical records
confirm that the visit occurred in December 2012.

pages and **THREW** the journal" back at plaintiff.  (*Id*.) (emphasis in original). Because Dr. Abdellatif did nothing to assist with his ailments, plaintiff contends that he filed a grievance (#NARF-1212-4008-28I).  *Id.*; *see also* Ex. A, Aff. of James Dulak.

Plaintiff also objects to defendants' motion because, like his first argument, Drs. Hutchinson and Abdellatif have refused to treat plaintiff's symptoms.  (*Id*. at 5).  Plaintiff contends that merely performing diagnostic testing necessary to acknowledge or verify a diagnosis cannot be considered "treatment."  (*Id*). Plaintiff argues that defendants should be providing symptomatic treatment and their failure to do so is a violation of the Eighth Amendment.  (*Id*.)

Plaintiff contends, contrary to defendants averments otherwise, that he is symptomatic.  (Dkt. 106, at 6-7).  For example, plaintiff attached his daily medical journal to his Complaint, which lists many complaints that are inclusive of the symptoms associated with HCV.  (Dkt. 1, Ex. B).  Plaintiff also showed Dr. Abdellatif his medical journal at his chronic care visit in December 2012, which chronicled his HCV symptoms.  (Dkt. 106, at 7).  During this visit, plaintiff alleges that he counseled with Dr. Abdellatif regarding his HCV symptoms and how they were interfering with his daily activities.  (*Id.*)

Plaintiff avers that he has received proper diagnostic care, however, he has received "nothing" for the treatment aspect of his care for his HCV symptoms.

15

(Dkt. 106, at 8).  Plaintiff contends that he was prescribed NSAIDS for his broken back and surgical steel implants for pain.  (*Id*.)  However, he has received no treatment for his HCV symptoms, including medications that would effectively alleviate the pain.  (*Id*. at 9).

Plaintiff also contends that the FDA has approved new drugs, other than Interferon.  (*Id*. at 8).  As such, plaintiff argues that Dr. Hutchinson's argument that the current treatment is not low risk, well tolerated, or highly effective, and has to be carefully considered before providing it to a patient, is out-dated.[2]  (Dkt. 106, at 8).  Plaintiff argues that once a patient develops cirrhosis, success rates drop on the old treatments which are Riboflavin and Interferon.  Therefore, according to plaintiff, waiting to treat his HCV symptoms is deliberately indifferent and also creates possible, future irreparable harm.  (*Id*.)

Plaintiff also questions why defendants have not attached the national standards that they are following to determine who receives HCV treatment.  (Dkt. 106, at 11-12).  Plaintiff contends that if the national standards were produced, it would show that he meets the criteria for HCV treatment.  (*Id*.)

C.    Drs. Hutchinson and Abdellatif's Reply

Defendants contend that plaintiff's medical records confirm that Dr.

---

[2]  According to plaintiff, the latest HCV treatment is called HARVONI, is taken for 12 weeks and is 96-100% effective.  (*Id*.)

16

Abdellatif provided plaintiff with an extensive examination and treatment during his December 2012 chronic care visit. (Dkt. 107, at 2; *see also* Ex. A, at 49-52). During this examination, Dr. Abdellatif also entered multiple orders on plaintiff's behalf. (*Id*.) Defendants aver that plaintiff may disagree with this care, but his disagreement does not give rise to a constitutional claim. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976); *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003). Plaintiff fails to realize that extensive testing is performed as a part of his treatment plan, which is appropriate for someone with plaintiff's condition. (Dkt. 107, at 2; *citing generally* Dkt. Nos. 80-3, 80-4, 80-5). Moreover, defendants contend that plaintiff's medical records contain more than merely diagnostic testing. (*Id*.) For example, plaintiff's own allegations and evidence show that he received a variety of pain medication including NSAIDS, Elavil, Tegretol and Naprosyn. (Dkt. 106, at 9, 17, 50). Plaintiff presents no medical evidence to overcome the evidence presented by defendants; plaintiff's affidavit is insufficient. (Dkt. 107, at 4-5, *citing* Dkt. 106, at 6).

Defendants contend that the crux of plaintiff's complaint appears to be that he has not been provided the particular medications and/or other treatment he desires; however, they say that this is a quintessential disagreement with the judgment of his medical providers and prescribed course of treatment, which cannot establish an Eighth Amendment violation. *Westlake*, 537 F.2d at 860 n. 5;

*Owens*, 79 Fed. Appx. at 161.

**IV.    Analysis and Conclusions**

      A.    <u>Standard of Review</u>

      Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

      Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the

party opposing a motion for summary judgment must make an affirmative showing

with proper evidence and must "designate specific facts in affidavits, depositions,

or other factual material showing 'evidence on which the jury could reasonably

find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the

minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477

U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

However, mere allegations or denials in the non-movant's pleadings will not

satisfy this burden, nor will a mere scintilla of evidence supporting the

non-moving party. *Anderson*, 477 U.S. at 248, 251.

    B.    <u>Legal Analysis</u>

        1.    The Eighth Amendment

    In the context of medical care, a prisoner's Eighth Amendment right to be

free from cruel and unusual punishment is violated only when the prisoner can

demonstrate a "deliberate indifference" to his serious medical needs. *Estelle v.*

*Gamble*, 429 U.S. 97, 104-06 (1976). "Where a prisoner has received some

medical attention and the dispute is over the adequacy of treatment, federal courts

are generally reluctant to second guess medical judgments and to constitutionalize

claims that sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th

Cir. 1976) (citations omitted). Moreover, mere negligence in identifying or

treating a medical need does not rise to the level of a valid mistreatment claim under the Eighth Amendment. *Estelle*, 429 U.S. at 106.

A viable Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. Courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The Sixth Circuit has stated that a medical need is sufficiently serious if the

need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (citation omitted).  For obvious medical needs left completely untreated, "the delay alone in providing medical care creates a substantial risk of serious harm." *Id.* at 899.  By contrast, where a "'deliberate indifference' claim is based on a prison's failure to treat a condition adequately" or on "a determination by medical personnel that medical treatment was unnecessary," a plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Id.* at 897-98.   In this case, defendants have not challenged plaintiff's assertion that his HCV condition is a serious medical need, therefore, the court will focus its attention on the second inquiry.

The subjective component requires that a defendant act with deliberate indifference to an inmate's health or safety. *Farmer*, 511 U.S. at 834.  To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Id.* at 837.  In other words, this prong is satisfied when a prison official acts with criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial risk of serious harm." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (citing *Farmer*, 511 U.S. at 839-40).  "Basically,

there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention." *Lewis v. Corr. Med. Servs.*, 2009 WL 799249, at *2 (E.D. Mich. Mar. 24, 2009).

In cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain treatment decisions made by the medical staff, the plaintiff fails to state a claim under the Eighth Amendment. *See McFarland v. Austin*, 196 Fed. Appx. 410, 411 (6th Cir. 2006) ("as the record reveals that McFarland has received some medical attention and McFarland's claims involve a mere difference of opinion between him and medical personnel regarding his treatment, McFarland does not state a claim under the Eighth Amendment"); *White v. Corr. Med. Servs., Inc.*, 94 Fed. Appx. 262, 264 (6th Cir. 2004) (affirming dismissal of the complaint for failure to state a claim where the essence of plaintiff's claims was that he disagreed with the defendants' approaches to his medical treatment where defendant discontinued plaintiff's previous course of treatment and prescribed what plaintiff considered to be less effective treatment); *Catanzaro v. Michigan Dep't of Corr.*, 2010 WL 1657872, at *3 (E.D. Mich. Feb. 28, 2010) (plaintiff failed to state a claim of deliberate indifference when "he specifically alleges that he was given medications that proved

22

ineffective to relieve his symptoms, rather than medications that he believed were more effective, such as Drixoral, Sudafed and Deconamine"), *adopted by* 2010 WL 1657690 (E.D. Mich. Apr. 22, 2010); *Allison v. Martin*, 2009 WL 2885088, at *7 (E.D. Mich. Sept. 2, 2009) (plaintiff failed to state a claim of deliberate indifference in violation of the Eighth Amendment when the complaint reveals plaintiff was seen over a dozen times for his eczema and was given medication, though not the "type" and quantity he requested). Thus, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d at 703.

>    2.    The Courts' Rulings on Plaintiff's Motion for a Preliminary Injunction

In conjunction with the filing of his complaint, plaintiff also filed a motion for a preliminary injunction to ensure that he received medical attention for, among other things, his HCV. (Dkt. 4). On June 9, 2014, the undersigned concluded that the record confirmed that plaintiff had received continuous medical evaluation, tests, treatment and medication. (Dkt. 56, at 10). On this point, this court stated:

>    Plaintiff had an ultrasound and biopsy of his liver in July
>    2011, and a subsequent appointment with the MDOC's

23

Infectious Disease Specialist in November 2011, at which time it was determined that plaintiff's condition had not progressed to the point that treatment was medically necessary. The liver biopsy revealed only stage 1 of 4 fibrosis, and examination revealed no overt extrahepatic disease due to plaintiff's Hepatitis. Instead, re-checks were ordered every six months. . . . And, the MDOC Pain Management Committee reviewed plaintiff's file and placed plaintiff on Tegretol to manage his pain and an anti-inflammatory medication, but did not recommend any narcotic pain medications. However, Tegretol was discontinued at plaintiff's request in November 2012 to stop the medication.

(*Id*. at 10-11). This court noted that plaintiff had acknowledged defendants' treatment of him, but that plaintiff believed that the evaluations were not proper and that he did not receive the medications that he desired. However, in ruling on plaintiff's motion for a preliminary injunction, this court concluded that defendants:

[E]xercised their professional medical judgment regarding the appropriate course of treatment. Even if these decisions were wrong or negligent, they do not show deliberate indifference to plaintiff's serious medical needs. Defendants provided medical attention and provided diagnostic tests and medication, just not the medication or treatment plaintiff wanted. That plaintiff disagrees with this course of treatment does not amount to deliberate indifference because it is well settled that "differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim." *Christian*, 2013 WL 607783, at *5 (citation omitted); *see also Greenman v. Prison Health Servs.*, 2011 WL 6130410, at *10 (W.D.

24

Mich. Dec. 8, 2011) (granting summary judgment where "the record shows that defendant treated plaintiff's condition on an ongoing basis with appropriate medications. Further, plaintiff's preference for narcotics and his dissatisfaction with the non-narcotic pain medications prescribed by [defendant] falls far short of supporting an Eighth Amendment claim."); *Wright v. Genovese*, 694 F. Supp.2d 137, 160-61 (N.D.N.Y. 2010) (explaining that a physician's "concern about prescribing narcotic pain medication, on which inmates with possible substance abuse issues could become dependent, may appropriately inform a medical judgment about what drug to prescribe") (collecting cases), *aff'd*, 415 Fed. Appx. 313 (2d Cir. 2011).

(Dkt. 56, at 12-13). In denying plaintiff's motion, the court concluded that "plaintiff's disagreement with particular medical decisions made by defendants and his conclusory allegations of deliberate indifference do not negate defendants' allegations that they reasonably and diligently addressed plaintiff's medical needs over an extended period of time." (*Id*. at 13). The court also noted that it is ill-equipped to micro-manage prison medical treatment. *See Westlake*, 537 F.2d at 860 n. 5.

On September 9, 2014, the district court entered an order accepting this court's report and recommendation denying plaintiff's motion for a preliminary injunction. (Dkt. 69). In its order, the district court agreed with this court that plaintiff's objections essentially show a disagreement with the treatment or lack of treatment that plaintiff had received from defendants. The district court reiterated

that a difference of opinion regarding treatment fails to state a claim under the Eighth Amendment.  *See Saedeh v. Hemingway*, 37 Fed. Appx. 194, 195 (6th Cir. 2002); *Chapman v. Parke*, 1991 WL 203080, at \*2 (6th Cir. Oct. 4, 1997).  The district court determined that at that stage of the proceedings plaintiff had not made a substantial showing of deliberate indifference to a serious medical need which demonstrated the likelihood of success on the merits.  (*Id*. at 2-3).  Indeed, "plaintiff is receiving treatment by the medical staff, even though plaintiff disagreed with the treatment currently being given by the staff."  (*Id*. at 3).  For all of these reasons, the district court refused to issue a preliminary injunction.  (*Id*.)

3.   Plaintiff Failed to Show Deliberate Indifference

The district court left open the possibility for plaintiff to bring forward evidence to establish deliberate indifference to a serious medical need.  However, plaintiff's arguments in response to defendants' current motion for summary judgment on his HCV claim are the same as those he made in when he moved for a preliminary injunction and which the district court rejected.  Furthermore, plaintiff did not bring forward additional evidence to support his two previously rejected theories.  Importantly, defendants have provided evidence that confirms that plaintiff remains medically stable with no emergent HCV symptoms, and that he continues to be monitored for progression in accordance with national standards and is being treated as directed.  (Dkt. 80, at 14).

26

## IV.   Recommendations

For the reasons stated herein, the undersigned recommends that defendants'
motion for summary judgment (Dkt. 80) be **GRANTED**, and that plaintiff's
Hepatitis C claim be dismissed.  It is also **RECOMMENDED** that Dr. Hutchinson
be **DISMISSED WITH PREJUDICE** because no further claims are pending
against him.

The parties to this action may object to and seek review of this Report and
Recommendation, but are required to file any objections within 14 days of service,
as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule
72.1(d).  Failure to file specific objections constitutes a waiver of any further right
of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and
Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some
issues but fail to raise others with specificity will not preserve all the objections a
party might have to this Report and Recommendation.  *Willis v. Sec'y of Health
and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of
Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule
72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"
etc.  Any objection must recite precisely the provision of this Report and
Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: July 10, 2015                           s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on July 10, 2015, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system, which will send electronic
notification to the following all counsel of record, and I certify that I have mailed
by United States Postal Service the foregoing pleading to the following non-ECF
participant(s), at the following address(es): James Dulak #463678, Gus Harrison
Correctional Facility, 2727 E. Beecher Street, Adrian, MI 49221.

                                              s/Durene Worth
                                              Acting in the absence of
                                              Tammy Hallwood, Case Manager
                                              (810) 341-7887
                                              tammy_hallwood@mied.uscourts.gov