UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES A. DULAK,                          Case No. 14-10193

        Plaintiff,              Denise Page Hood
v.                                       United States District Judge

CORIZON INC., Dr. HUTCHINSON,            Michael Hluchaniuk
Dr. STEVE, Dr. ABDELLATIF, PA JINDAHL,   United States Magistrate Judge
ROGERS, TAMMY ROTHHAAR

        Defendants.
_____/

## REPORT AND RECOMMENDATION ON DR. ABDELLATIF'S MOTION FOR SUMMARY JUDGMENT [Dkt. 100]

### I.    Procedural History

On January 3, 2014, plaintiff James A. Dulak, an inmate currently incarcerated by the Michigan Department of Corrections at the Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan, brought this 42 U.S.C. § 1983 action, alleging a violation of his rights under the United States Constitution. (Dkt. 1). On February 19, 2014, District Court Judge Denise Page Hood referred this case to the undersigned for all pretrial purposes. (Dkt. 11). On April 14, 2015, Dr. Badawi Abdellatif filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, alleging that plaintiff cannot establish that he was improperly denied a special shoe accommodation in violation of the Eighth Amendment.

1

(Dkt. 100).  After being granted an extension, plaintiff filed his response brief on July 9, 2015.  (Dkt. 114).  Dr. Abdellatif his reply brief on July 14, 2015.  (Dkt. 116).

The motion is now ready for report and recommendation.  For the reasons set forth below, the undersigned recommends that defendant Dr. Abdellatif's motion for summary judgment be **GRANTED**, and because there are no further claims against Dr. Abdellatif pending that he be **DISMISSED** from the action.

## II.    Factual Background

### A.    Plaintiff's Allegations

At all times relevant to the events at issue here, plaintiff was an inmate at the Gus Harrison Correctional Facility.  (Dkt. 1 ¶ 6).  Plaintiff alleges that Dr. Abdellatif is a doctor at the facility and is responsible for the provision of medical care to prisoners.  (*Id*. ¶ 9).

The court briefed plaintiff's allegations as they relate to his shoe accommodation claim in its Report and Recommendation on plaintiff's motion for summary judgment [Dkt. 70] and Stieve's cross-motion for summary judgment [Dkt. 72].  (*See* Dkt. 112).  As such, it is not necessary for the court to recite plaintiff's claims here.  The undersigned does point out, though, that Dr. Abdellatif did not join in Dr. Stieve's cross-motion for summary judgment because plaintiff's motion did not address any claims against him, and the District Court in

adopting the Report and Recommendation noted that the shoe accommodation claim was still pending against Dr. Abdellatif.  (Dkt. 125).

 B. Evidence of Plaintiff's Medical Treatment

Plaintiff's medical records indicate that he was transferred to ARF on February 28, 2012.  (Dkt. 100, Ex. B, ¶ 4; *see also* Ex. A).  At that time, the records show that plaintiff was receiving treatment for a variety of conditions including hypertension, GERD, and Hepatitis C.  (*Id.*)  Plaintiff's medical history also includes an open reduction internal fixation (ORIF) procedure on his right ankle in 1998.  (*Id.*, Ex. B, ¶¶ 4, 8).  Plaintiff's records show no documented history of diabetes.  While noted to be a pre-diabetic, and given a nutritional assessment for self-management in May 2012, plaintiff was not diagnosed with diabetes during the relevant time period nor do his records indicate any symptoms associated with diabetes that would warrant a shoe accommodation.  (*Id.*, ¶¶ 7-8, 10).  Plaintiff had three chronic care and/or provider visits during 2012; however, he never complained or showed any indication of any need for special shoes during any of these appointments.  (*Id.*, ¶¶ 6, 10-11).

The record reveals a kite and encounter with nursing staff in August 2012 when plaintiff had sought special shoes and complained of diabetic feet.  In response, he was given band-aids and antibiotic ointment for a sore which was noted to be slightly red with no swelling or purulent drainage, and he was

3

instructed to speak with his medical provider concerning his request for special shoes. (*Id*., ¶ 9). Plaintiff did not speak to his provider regarding a request for special shoes, but he did submit a subsequent kite seeking a special shoe detail on November 26, 2012. (*Id*., ¶¶ 10-12). Specifically, plaintiff requested tennis shoe detail, reporting a history of foot injury and a limited ability to walk for distances due to not taking his pain medications. (*Id*., ¶ 12). Upon submitting his request, plaintiff was informed that he likely did not meet Medical Services Advisory Committee's (MDAC) guidelines for tennis shoes, however, he could still request the detail from his medical provider at his next appointment. (*Id*.)

Dr. Abdellatif then saw plaintiff on December 18, 2012. (*Id*., ¶ 13). The appointment focused on plaintiff's cardiovascular issues and Hepatitis C, but Dr. Abdellatif also concluded upon examination that plaintiff did not require a special shoe detail. (*Id*.) Specifically, the examination revealed that plaintiff's circulation was normal, and that he had no swelling nor ulceration. (*Id*.) Dr. Abdellatif concluded that plaintiff's feet were normal with an old, healed scar on his right foot, but that he had no deformities. (*Id*.) As a result of these findings, Dr. Abdellatif determined that special shoes were not medically indicated. (*Id*.)

Pursuant to MDOC Bureau of Health Care Services Shoe Guidelines that were in effect during the relevant period alleged in plaintiff's lawsuit, when an inmate has a medical condition requiring special footwear, health care staff assists

4

in prescribing same. (*Id.*, ¶ 14). Special footwear falls into two categories: (1) medical footwear, which is prescribed in extreme circumstances such as deformity, amputation, or other contractures requiring ankle, foot, or knee orthosis, or otherwise requiring intervention of a podiatrist or orthotist; and (2) non-medical accommodative footwear, which includes athletic or tennis shoes, and is prescribed to accommodate conditions such as leg length, diabetes, vascular insufficiency, ulcers or other serious foot conditions. (*Id.*) Non-medical footwear only requires the approval of a Regional Medical Officer. (*Id.*) Athletic or tennis shoes are indicated when an inmate is shown to have severe arterial insufficiency, advanced diabetes mellitus with current vascular or neurological complications, peripheral neuropathies or venous insufficiency with evidence of venous stasis ulcerations. (*Id.*)

When Dr. Abdellatif saw plaintiff in December 2012, Dr. Abdellatif concluded that plaintiff's subjective complaints combined with his physical examination simply did not support a conclusion that special footwear was medically indicated. (*Id.*, ¶¶ 14-15). In fact, plaintiff made subsequent requests for shoe accommodations that were submitted on his behalf in January 2013 and February 2014, that were denied at the regional level because it was determined

5

that they were not medical indicated for his condition.[1]  For all of these reasons, Dr. Abdellatif argues that plaintiff cannot establish an Eighth Amendment violation.

### III.   Parties' Arguments

#### A.    Dr. Abdellatif's Motion for Summary Judgment

Dr. Abdellatif brings his motion for summary judgment under Fed. R. Civ. P. 56 because he claims that plaintiff is unable to sustain his Eighth Amendment claim against him that he improperly denied a special shoe accommodation in violation of the Eighth Amendment.  (Dkt. 100).  Defendant specifically argues that plaintiff is unable to establish that he was deliberately indifferent to plaintiff's serious medical needs.  (*Id*. at 6-9).

To establish an Eighth Amendment claim, a plaintiff must show that his medical need is sufficiently "serious."  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Comstock v. McCrary*, 273 F.3d 693, 702-3 (6th Cir. 2001).  Defendant Abdellatif contends that plaintiff's records do not reveal any evidence that he was suffering from any condition indicating that a special shoe accommodation was warranted.

---

[1]  On September 28, 2015, the District Court adopted the undersigned's Report and Recommendation granting Dr. Stieve's motion for summary judgment on plaintiff's shoe accommodation claim.  (Dkt. 125).  Plaintiff alleged that Dr. Stieve was the Regional Medical Officer and was ultimately responsible for the final denial of his shoe accommodation claims in 2013 and 2014.  (Dkt. 1 ¶ 8).  The District Court specifically concluded: "The Court agrees with the Magistrate Judge that based on the evidence submitted, Dr. Stieve did not violate Plaintiff's Eighth Amendment rights in treating Plaintiff's medical needs."  (Dkt. 125, at 2).

(*Id.*, Ex. B, ¶¶ 4, 6-8, 10-15).   While plaintiff may have undergone foot surgery years earlier, Dr. Abdellatif's December 2012 physical examination did not reveal any deformities, or a need for special shoes.  (*Id.*, ¶¶ 13-15).

Dr. Abdellatif contends that while plaintiff may disagree with his treatment decision, his disagreement does not violate the Constitution.  *See Comstock*, 273 F.3d at 702; *see also Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (noting the distinction between a complete denial of care versus claims of inadequate care and providing in the latter, "federal courts are generally reluctant to second guess medical judgments.").  Dr. Abdellatif thus argues that because plaintiff's medical records demonstrate that he did not disregard a substantial risk of harm to plaintiff, he is entitled to summary judgment.

Alternatively, Dr. Abdellatif argues that even if plaintiff could establish any level of error in failing to submit a special shoe accommodation request on plaintiff's behalf in 2012, plaintiff's would be unable to establish causation for his § 1983 claim.  Specifically, when subsequent providers requested a shoe accommodation for plaintiff in 2013 and 2014, the providers' requests were denied at the regional level, by Dr. Stieve, because it was determined that special shoes were not medically indicated.  (Ex. B, ¶¶ 16-17).  In other words, even if Dr. Abdellatif had requested a special shoe accommodation for plaintiff, the outcome would have been the same.  *See Deaton v. Montgomery Cty.*, 989 F.2d 885, 889

7

(6th Cir. 1993) ("Congress did not intend § 1983 liability to attach where causation is absent").  In the absence of causation, argues Dr. Abdellatif, plaintiff's shoe accommodation claim must be dismissed.

        B.      <u>Plaintiff's Response</u>

Plaintiff refers the court to his response to Dr. Stieve's cross-motion for summary judgment and his arguments and exhibits there.  (*See* Dkt. 70).  Plaintiff desires to incorporate arguments made there, together with the exhibits into his response to Dr. Abdellatif's motion for summary judgment.  Specifically, plaintiff says that his medical records from Neurological Consultants of Northeast Wisconsin (attached to his original Complaint as Ex. B) indicate that he has peripheral neuropathy, one of the conditions for which the MDOC issues a shoe accommodation.  In further support, plaintiff attaches the Medical Services Advisory Committee's (MDAC) criteria for the conditions that are indicated for a shoe accommodation.

Plaintiff also argues that his daily medical journal entries indicate that his feet were hurting and that he was in severe pain.  Plaintiff claims that these entries show that Dr. Abdellatif could not have addressed plaintiff's pain complaints.  Plaintiff specifically avers that Dr. Abdellatif did not make a sufficient examination of his feet, noting only one surgical scar on his right foot, when there are three.  Plaintiff claims that Dr. Abdellatif's insufficient examination is

8

highlighted by the more comprehensive examination conducted by physician assistant Jindal in January 2013.   PA Jindal's report showed multiple problems with plaintiff's feet including denervation and a moderately reduced range of motion.  Plaintiff argues that the discrepancy between the two reports destroys Dr. Abdellatif's credibility.

>        C.    Dr. Abdellatif's Reply

Dr. Abdellatif avers that the objective medical records support his decision to deny plaintiff a shoe accommodation, as such plaintiff is not able to sustain an Eighth Amendment violation.  Plaintiff directs the court to the claims and evidence that he raised in his case against Dr. Stieve, however, the District Court recently adopted a Report and Recommendation in favor of Dr. Stieve.  (Dkt. 112, 125).  Dr. Abdellatif contends that for the same reasons, plaintiff's claims against him also fail.

Dr. Abdellatif also submits that plaintiff's argument about his credibility is not supported by the records.  The records indicate that Dr. Abdellatif examined plaintiff on December 18, 2012 during a chronic care visit.  (Dkt. 100-3, ¶ 13). Although the main purpose for the visit was for plaintiff's Hepatitis C, after performing a physical examination, Dr. Abdellatif also concluded that plaintiff did not require special shoe detail.  (*Id.*)  The records note Dr. Abdellatif's observation of normal circulation, no swelling, and no ulceration.  In addition, plaintiff's feet

were found to be normal with an old healed scar, but no deformities noted.  (*Id.*)

In Dr. Abdellatif's opinion, the presentation did not warrant special shoes.  (*Id.*)

These records are not contrary to plaintiff's subsequent appointment in January

2013.  In particular, in January 2013, plaintiff saw a physician assistant for

specific complaints of foot pain.  (Dkt. 100-2, Ex. A, pp. 33-35).  This provider

noted surgical scars and did not make any notation of observed deformity; the

physician assistant also found plaintiff's foot to be "normal" but with complaints

of mild pain and moderately reduced range of motion.  (*Id.*)  The physician

assistant ultimately submitted a request for a shoe accommodation on plaintiff's

behalf, which was deferred at the regional level based on a medical determination

that special shoes were not medically indicated.  (Dkt. 100-3, ¶ 16).

     As noted above, Dr. Abdellatif contends that the medical records do not

conflict and the ultimate determination–that special shoes were not medically

indicated for plaintiff–was the same.  That different providers made different

recommendations does not create a credibility issue or a constitutional violation.

*Acord v. Brown*, 43 F.3d 1471 (6th Cir. 1994); *Mitchell v. Hininger*, 553 Fed.

Appx. 602, 606 (6th Cir. 2014).  Dr. Abdellatif contends that the crux of plaintiff's

complaint appears to be that he has not been provided the particular treatment he

desires, however, this is a quintessential disagreement with the judgment of his

medical providers and prescribed course of treatment, which cannot establish an

Eighth Amendment violation.

**IV.     Analysis and Conclusions**

A.     <u>Standard of Review</u>

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the

party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

   B.   <u>Legal Analysis</u>

   In the context of medical care, a prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated only when the prisoner can demonstrate a "deliberate indifference" to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (citations omitted). Moreover, mere negligence in identifying or treating a medical need does not rise to the level of a valid mistreatment claim

12

under the Eighth Amendment. *Estelle*, 429 U.S. at 106.

A viable Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. Courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The Sixth Circuit has stated that a medical need is sufficiently serious if the need is "so obvious that even a lay person would easily recognize the necessity for

13

a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (citation omitted).  For obvious medical needs left completely untreated, "the delay alone in providing medical care creates a substantial risk of serious harm." *Id.* at 899.  By contrast, where a "'deliberate indifference' claim is based on a prison's failure to treat a condition adequately" or on "a determination by medical personnel that medical treatment was unnecessary," a plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Id.* at 897-98.

When plaintiff moved for summary judgment against Dr. Stieve and Dr. Stieve filed a cross-motion, plaintiff's motion did not raise the shoe accommodation issue against Dr. Abdellatif at that point.  As such, Dr. Abdellatif argued that the motion did not entitle plaintiff to any relief against him.  In its ruling, the District Court adopted the undersigned's Report and Recommendation granting Dr. Stieve's cross-motion for summary judgment on the shoe accommodation claim and concluded that "there are no genuine issues of material fact remaining and Dr. Stieve is entitled to judgment in his favor.  The Court agrees with the Magistrate Judge that based on the evidence submitted, Dr. Stieve did not violate Plaintiff's Eighth Amendment rights in treating Plaintiff's medical needs."  (Dkt. 125, at 2).

In the court's Report and Recommendation, the undersigned said this

regarding the objective component of the Eighth Amendment inquiry regarding

plaintiff's shoe accommodation claim:

> Here, the court must determine whether plaintiff has
> presented evidence that his medical need was
> "sufficiently serious." The court notes that in his motion
> for summary judgment, plaintiff does not specifically
> direct the court to supporting evidence other than to
> attach his medical records to the motion in the form of
> exhibits and refer to those medical records generally.
> (Dkt. 70, at p. 11). Nevertheless, the court has reviewed
> plaintiff's medical evidence and has determined that
> plaintiff did suffer a fall in 1998 which resulted in the
> fracture of his right foot. (Dkt. 70, at Pg. ID 836).
> Plaintiff's fracture required two surgeries. (*Id*.) An x-ray
> was completed of plaintiff's right foot in May 2011. In
> August 2011, a physical exam indicated that plaintiff
> presented with a surgical scar on his right foot/ankle and
> a limp on his right side. (Dkt. 70, at Pg. ID 851).
> However, plaintiff tested normally on the following
> ankle tests: the "anterior drawer," "Talar tilt" and
> "Subtalar tilt." (*Id*.)  Moreover, plaintiff's lower
> extremity strength/neurovascular was deemed normal
> and his neurological reflexes (both Patellar and Achilles)
> were both normal. (*Id*.) The pain assessment in his
> ankle/foot was assessed to be "fair." (*Id*.)

> Importantly, this is not a case where treatment was not
> provided.  Indeed, plaintiff received several medications
> for his pain while at MDOC, including: Neurotin, Elavil,
> Nsaids, and Tylenol. (Dkt. 70, at Pg. ID 850). Plaintiff
> reported varying levels of effectiveness regarding these
> medications. For example, plaintiff indicated that Elavil
> gave him pain relief of a five on a one-to-ten scale,
> however, Neutrotin gave him pain relief of a two on the
> same pain scale. (*Id*.) As noted previously, MDOC also
> provided medical testing, x-raying plaintiff's right foot
> and completing other forms of testing on his foot and

ankle to determine whether further treatment and follow-up was necessary. (Dkt. 70, at Pg. ID 850-51). Plaintiff was also referred to the Pain Management Committee on two occasions, on July 7, 2011 and August 17, 2011. (Stieve Aff. ¶ 6). Importantly, Dr. Stieve testified that athletic shoes were never identified as a proper course of treatment in plaintiff's medical records. (Dkt. 70, at Pg. ID 856). The court's review of the record confirms this conclusion.

The MDOC Medical Service Advisory Committee Guidelines outlines when MDOC is responsible for providing prisoners with properly fitting state shoes. (Dkt. 70, Ex. B). The guidelines provide that athletic or tennis shoes "are to be provided by Healthcare on the recommendation of a Medical Practitioner for the following conditions only":

1) Severe arterial insufficiency;

2) Advanced diabetes mellitus; with current vascular or neurological complications;

3) Peripheral neuropathies of lower extremities decreasing sensation;

4) Venous insufficiency with evidence of venous stasis ulcerations (new or old).

(Dkt. 70, at Pg. ID 845). Dr. Stieve indicated that on January 17, 2013, he reviewed plaintiff's request for a shoe accommodation and determined that plaintiff did not meet the MDOC criteria, but advised plaintiff that he could purchase his own shoes if desired. (Stieve Aff. ¶ 10). On April 1, 2014, the ACMO (Assistant Chief Medical Officer) reviewed an RMO's (Regional Medical Officer) request for tennis shoes. The ACMO deferred the request and indicated that tennis shoes were not medically necessary and advised plaintiff that he could

> purchase his own shoes. (*Id.* at ¶ 11). Moreover, plaintiff continues to be seen by MDOC medical professionals. (*Id.* at ¶ 13).

(Dkt. 112, at 16-19) (footnotes eliminated). Based on the foregoing, the undersigned concluded that plaintiff failed to establish an injury sufficiently serious in nature to constitute a violation of the Eighth Amendment. *Blackmore*, 390 F.3d at 897-98.

In response to Dr. Abdellatif's motion, plaintiff indicates that he is relying on the same arguments and evidence that he presented in his motion against Dr. Stieve. (Dkt. 114, at 2-3). Importantly, plaintiff has not directed the court to any new evidence that would alter the court's previous conclusions. As such, the court adopts its prior conclusion that plaintiff has not established an injury sufficiently serious in nature as to constitute a violation of the Eighth Amendment.

As with Dr. Stieve, the undersigned additionally finds that plaintiff cannot raise a genuine issue of material fact as to the second requirement of establishing an Eighth Amendment violation–namely, that Dr. Abdellatif was deliberately indifferent to his serious medical needs. The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *Farmer*, 511 U.S. at 834. To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner,

17

that he did in fact draw the inference, and that he then disregarded the risk." *Id.* at 837.  In other words, this prong is satisfied when a prison official acts with criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial risk of serious harm." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (*citing Farmer*, 511 U.S. at 839-40).  "Basically, there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention." *Lewis v. Corr. Med. Servs.*, 2009 WL 799249, at *2 (E.D. Mich. Mar. 24, 2009).

In cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain treatment decisions made by the medical staff, the plaintiff fails to state a claim under the Eighth Amendment.  *See McFarland v. Austin*, 196 Fed. Appx. 410, 411 (6th Cir. 2006) ("as the record reveals that McFarland has received some medical attention and McFarland's claims involve a mere difference of opinion between him and medical personnel regarding his treatment, McFarland does not state a claim under the Eighth Amendment"); *White v. Corr. Med. Servs., Inc.*, 94 Fed. Appx. 262, 264 (6th Cir. 2004) (affirming dismissal of the complaint for failure to state a claim where the essence of plaintiff's claims was that he disagreed with the defendants' approaches to his medical treatment where defendant discontinued plaintiff's previous course

of treatment and prescribed what plaintiff considered to be less effective treatment); *Catanzaro v. Michigan Dep't of Corr.*, 2010 WL 1657872, at *3 (E.D. Mich. Feb. 28, 2010) (plaintiff failed to state a claim of deliberate indifference when "he specifically alleges that he was given medications that proved ineffective to relieve his symptoms, rather than medications that he believed were more effective, such as Drixoral, Sudafed and Deconamine"), *adopted by,* 2010 WL 1657690 (E.D. Mich. Apr. 22, 2010); *Allison v. Martin*, 2009 WL 2885088, at *7 (E.D. Mich. Sept. 2, 2009) (plaintiff failed to state a claim of deliberate indifference in violation of the Eighth Amendment when the complaint reveals plaintiff was seen over a dozen times for his eczema and was given medication, though not the "type" and quantity he requested). Thus, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d at 703.

The law is clear where a prisoner is provided with treatment, the fact that he is not provided with the best possible treatment does not make the course selected, unacceptable or unconstitutional. Plaintiff has not shown that Dr. Abdellatif was deliberately indifferent to his medical needs by selecting a treatment option that was within the approved range.

19

## IV.   Recommendations

For the reasons stated herein, the undersigned recommends that defendant's motion for summary judgment (Dkt. 100) be **GRANTED**, and that plaintiff's shoe accommodation claim against Dr. Abdellatif be dismissed.  It is also **RECOMMENDED** that Dr. Abdellatif be **DISMISSED** because no further claims are pending against him.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: October 26, 2015              s/Michael Hluchaniuk
                                    Michael Hluchaniuk
                                    United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on October 26, 2015, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following all counsel of record, and I certify that I have mailed
by United States Postal Service the foregoing pleading to the following non-ECF
participant(s), at the following address(es): James Dulak #463678, Gus Harrison
Correctional Facility, 2727 E. Beecher Street, Adrian, MI 49221.

                                    s/Tammy Hallwood
                                    Case Manager
                                    (810) 341-7887
                                    tammy_hallwood@mied.uscourts.gov